OPINION
Glenn R. Hardin, Jr. was indicted on November 22, 1994, for three counts of rape by force or threat of force and one count of gross sexual imposition (victim under the age of thirteen). After confessing, Hardin pled guilty to two rape charges and to the gross sexual imposition charge. On February 15, 1995, Hardin was sentenced to nine to twenty-five years on each rape count, to be served concurrently, and two years on the gross sexual imposition count, to be served consecutively to the rape counts. After an evidentiary hearing on March 30, 2000, the trial court designated Hardin to be a sexual predator.
Hardin now appeals the trial court's determination classifying him as a sexual predator, asserting two assignments of error.
 I. The trial court's decision designating Appellant a sexual predator, as defined by R.C. 2950.01(E), is contrary to the manifest weight of the evidence[.]
We have reviewed the documents that the trial court relied upon in making its determination, including the House Bill 180 screening instrument prepared in 1999, a sexual predator screening instrument prepared in 1997, an institution summary report prepared by Lebanon Correctional Institute in 1997, the original pre-sentence investigation report from 1995, a psychological evaluation completed by Dr. D. Susan Perry Dyer, and Hardin's certificates of completion for the Offense Cycle program, the Eliminating Self-Defeating Behaviors program, and the Victim Awareness program. We have also reviewed the sexual predator classification hearing transcript.
Hardin argues that the State failed to produce clear and convincing evidence that he is a sexual predator, therefore his classification as a "sexual predator" is against the manifest weight of the evidence. We note that in weight of the evidence challenges, this court:
 [R]eview[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
 State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. In a weight of the evidence challenge, we defer to the factfinder's decision as to which testimony to credit, and to what extent to do so. State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288, unreported. This standard allows us to "judge the credibility of opposing opinion testimony but not of fact testimony, unless it is so incredible that it defies belief." City ofFairborn v. Boles (May 15, 1998), Greene App. No. 97-CA-110, unreported.
In order to find a sexual offender to be a sexual predator, the trial court must find, by clear and convincing evidence, that the offender is likely to commit, in the future, one or more sexually-oriented offenses. R.C. 2950.01(E), 2950.09. The degree or measure of proof for clear and convincing evidence is that which will produce in the trier of fact's mind a firm conviction or belief of the truth of the facts. Cross v.Ledford (1954), 161 Ohio St. 469, 477, 53 Ohio Op. 361, 364. It is more than a mere preponderance of the evidence, but does not rise to the extent of certainty that is required beyond a reasonable doubt. Id.
R.C. 2950.09(B)(2)(a) through (j) list the factors a trial court must consider in determining whether a person is a sexual predator:
(a) The offender's age;
 (b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 (d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 (e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 (f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 (g) Any mental illness or mental disability of the offender;
 (h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 (i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 (j) Any additional behavioral characteristics that contribute to the offender's conduct.
The trial court's opinion is very brief, and offers us little insight into its basis for classifying Hardin as a sexual predator who is likely to reoffend. Therefore, we will conduct a review of the evidence in the record and determine whether it is reasonable to find, using a clear and convincing standard of proof, that Hardin is likely to commit a sexually-oriented offense in the future.
Hardin was a victim of sexual and physical abuse during his childhood by his father. Hardin's first marriage to Sharon Kirkendall deteriorated in 1973 because he molested three of his four step-children, ages seven, nine and ten. Notably, the abuse occurred during his wife's chemotherapy sessions. The record reflects that Hardin would threaten and beat the children prior to forcing them to have sexual relations with him. Hardin was convicted of two counts of carnal knowledge of a female under the age of sixteen and one count of felonious assault on a minor. Incidentally, when asked by Dr. Dyer why the marriage had deteriorated, Hardin replied that he had molested "one" of her four children. Hardin began mental health counseling, however he failed to follow through with treatment after his release from incarceration.
Hardin married Jackie Regal in 1977, and the couple divorced in 1980. No children were born as a result of their marriage. In 1980, Hardin married Kathryn Treser, but failed to disclose his previous marriage and his convictions to her. When asked about this by his probation officer, Hardin explained that he had "forgot as that was so long ago."
Hardin's convictions at issue resulted from Hardin molesting his thirteen-year-old son and his nine-year-old daughter from his marriage to Treser. The abuse occurred over a period of three years. Hardin explained to Dr. Dyer that he had molested his son Glenn, but not his son Jonathan, because Glenn was "more mature for his age." He also denied sexually abusing his daughter, stating that he had "touched her one time accidentally."
The psychological evaluation and the pre-sentence investigation report indicate that Hardin abused various substances such as LSD, PCP and marijuana, but he stated to Dr. Dyer that he had stopped using those more than twenty years ago because the substances "just weren't doing [him] any good." Hardin stated that he had begun abusing alcohol at age thirteen, and that he "still abuses it at times." Hardin has never received treatment for substance abuse.
The pre-sentence investigation report indicates that Hardin is immature, avoids confronting his emotions, and fails to accept responsibility for his sexual behavior. His probation officer noted that Hardin's "attitude and behavior was similar according to prior probation and forensic reports." The psychological evaluation reflects Hardin as an individual who experiences "chronic and intense anger," and who lacks the ability to express his negative feelings appropriately. Dr. Dyer found Hardin to be dishonest and defensive regarding his sexual obsessions and impulses. Dr. Dyer concluded that Hardin lacks insight into the origins and consequences of his behaviors, and Hardin projects responsibility for his actions onto others. Finally, Dr. Dyer acknowledged Hardin's motivation for treatment, but found Hardin to be "out of touch with his own feelings and with the consequences of his own behavior."
At the sexual predator classification hearing, Hardin stated that he is motivated to receive treatment. He acknowledges that certain "triggers" have led him to act out his stresses in a sexual manner. He produced certificates of completion for various programs he had attended while incarcerated. At the time of the classification hearing, Hardin had recently begun the long-term Polaris program. Hardin stated his determination to complete the Polaris program, even if he had to voluntarily remain at Chillicothe Correctional Institution. According to Hardin, his participation in the Polaris program has made him aware of and regretful for his "mistakes" and the suffering he has caused others. Although there is no guarantee that he wouldn't reoffend, Hardin assured the trial court that it "wouldn't happen again."
After having reviewed the entire record and weighing the evidence and all reasonable inferences, we find clear and convincing evidence in the record to support the trial court's determination, and we find that the determination is not against the manifest weight of the evidence. The age of the victims, the long-term length of the abuse, and the pattern of Hardin choosing members of his family as victims, weigh heavily in favor of finding Hardin to be a sexual predator.
Hardin presented the trial court with evidence of his substantial efforts to rehabilitate himself while in prison, and we commend him and encourage his continued participation in these programs. However, there are many discrepancies between Hardin's testimony and the facts in this case. Given the evidence presented to the trial court surrounding the convictions in this case, the nature of Hardin's offenses, and the long-term occurrence of the abuse, we do find a pattern of abuse and the likelihood that Hardin will reoffend in the future. Additionally, Dr. Dyer's opinion that Hardin experiences episodic anger and hostility, coupled with the fact that he beat his victims prior to forcing them to have sexual intercourse with them in 1973, strengthens our determination.
Accordingly, Hardin's first assignment of error is overruled.
 II.
The court abused its discretion in designating Appellant a sexual predator[.]
Hardin asserts that the trial court's findings are "inadequate" based upon the following exchange between the trial court and himself:
 JUDGE DODGE: * * * what I don't want to do is discourage you from successfully completing Polaris. Polaris Program has a very good reputation. I want to encourage you to keep doing that. And I want to encourage you to keep doing the kinds of things that you have been doing. Even do more. Because what I am about to do — and I'm gonna — I think you're expecting that I am going to find you to be a Sexual Predator and — because I have to. . . .
MR. HARDIN: I understand.
 JUDGE DODGE: . . . under the law as it now looks. But that — that should not impact your progress while in the institution, your attitude in terms of any rehabilitation.
I'm not going to get into whether you are or are not rehabilitatable {sic} . . .
(Tr. 28-29.) Hardin argues that it was an abuse of discretion for the trial court to fail to consider his treatment programs and his ability to be rehabilitated under the law. We do not interpret the trial court's statement in this way. After acknowledging the programs and rehabilitative efforts that Hardin had pursued, especially the Polaris program which Hardin had just entered, the trial court found that there was overwhelming evidence that Hardin was likely to reoffend.
Hardin also argues error in the trial court's adjudication of him to be a sexual predator based upon Dr. Dyer's "outdated" psychological evaluation. At this point, it is important to note that Hardin's attorney and the State stipulated to the admission of the psychological evaluation at the beginning of the sexual predator classification hearing, and at that time Hardin did not object to its inclusion as evidence nor did he raise any issues with it being "outdated."
Despite Hardin's apparent waiver of error, we will address his argument. Hardin relies upon State v. Pryor (Mar. 10, 2000), Hamilton App. No. C-990497, unreported, whereby error was found in the trial court's reliance upon a 1987 Not-Guilty-by-Reason-of-Insanity report. The appellate court found that the report was insufficient evidence to rebut Pryor's evidence of rehabilitation twelve years later. The Pryor
court limited its holding to that case, stating that that type of evidence might be "persuasive" in other cases where shorter periods of time have passed between the offenses and the classification hearing.
In this case, there is no date on the psychological report, nor does Hardin provide us with one. The pre-sentence investigation report refers to a pending psychological report, and thus we can infer that the report is not older than the 1995 pre-sentence investigation report. Therefore, we distinguish this case from Pryor, supra, because a shorter period of time had passed between the offenses, the evaluation at issue, and the sexual predator classification hearing.
Moreover, we cannot say that the absence of a more recent psychological report would likely change the outcome, in light of Hardin's history, especially his prior convictions. In particular, we agree with the statement in the pre-sentence investigation, that Hardin's attitude and behavior has not changed since his convictions in 1973. Thus, we find that clear and convincing evidence exists to support the trial court's determination that Hardin is likely to reoffend.
Hardin's second assignment of error is overruled.
 __________________________ FREDERICK N. YOUNG, J.
BROGAN, J. and WOLFF, J., concur.